Good morning. May it please the court, my name is Susan E. Hill, and I represent the petitioner, Mr. Edward Cordoba. Before I begin, I'd like to say a friendly hello to you, Judge Zuhari. I'm also from Toledo, and I'm here because of the weather. Very good. Also, for what? I'm sorry? I missed your last sentence? Oh, I just said I'm also from Toledo, and I'm here because of the weather. Oh, well, congratulations. Thank you. That means there are two Mud Hen fans in Toledo. Back to Mr. Cordoba's case. His case is founded against the FARC in Colombia. And as the ample background documentation demonstrated, the FARC has a political ideology that is inherently based in a socioeconomic class warfare struggle. The FARC's struggle is targeted not only against the government and the paramilitary, but it's also targeted against society in general. The FARC has made numerous declarations. Several of them were in the background documentation, where they have specifically targeted a class of society. And inherently, they have identified a particular social group for purposes of asylum relief. And because the struggle is political in nature, then we also have a political element here as well. As I said, the FARC's beliefs are socioeconomic, and they have targeted both the wealthy and the middle class. And they do believe that the wealthy and the middle class are helping to support the government and to help it to fund itself to perpetuate its struggle against the FARC. So inherent to Mr. Cordoba's claim is his belief and his not only political belief, but it is inherent to his consciousness or his conscience that the FARC is wrong. He has been educated abroad. His family brought him up in a rather, I guess you'd say pro-business capitalist environment. He believes that he does have the rights and the necessity to make an independent income for himself by taking over the family businesses, running these businesses, and supporting himself and his family. It is a family business that he inherited into, so it was established before he came along. His name was put on the business licenses. He, as the eldest son, is in charge of the businesses. And the FARC began to target both the businesses at first in general, the trucking business, and then more specifically Mr. Cordoba by name, seeking him out, making telephone calls to the various businesses, actually physically visiting one of the sites in an attempt to kidnap him. You mentioned FARC and his involvement or interaction with FARC. And it seems that Mr. Cordoba was most politically active in 1998. Yes. But that appears to be a period during which he testified that he did not hear from the FARC at all. So doesn't that undermine his claim? No, Your Honor, it does not undermine the political element, because the FARC itself has a political platform that it is advancing. It has identified its political enemies, and those include the wealthy landowning business class. And while Mr. Cordoba did have a political viewpoint that he actively expressed in 1998, he continued to hold that political belief, continued to support that belief. And the belief itself extends merely beyond just the political party. It extends to his belief in the economic system itself, to capitalism and owning a business. And what's the impact of Enriquez-Rivas on your client's case? Your Honor, Enriquez-Rivas is very welcome. However, I think in this case, the BIA referred back to a matter of SEG and other cases. And in this particular instance, the FARC has identified the social group, and it's in the background documentation. I don't believe that we have a question that the social group is recognizable. It's definitely recognizable by the FARC, because they have published their viewpoint. It's on the internet, and it's very well known. The rest of society within Colombia knows about it. The actual group itself obviously knows about it. So if the BIA had applied the standard of social visibility articulated in Enriquez-Rivas, you think the outcome would have been what? Because the BIA just referenced back to general case law, and Enriquez-Rivas essentially determined that the BIA has not departed from the basic case law of ACOSTA, and then later on into SEG. I don't believe that Enriquez-Rivas mandates this be remanded for the particular social group analysis. I think there's enough evidence here. And due to the way the BIA worded its decision, this court has proper jurisdiction to review the issue itself. I understand that your client was anti-FARC. He was a member of the Conservative Party for a period of time. But what is the evidence that FARC knew of his political opinion, and that he was therefore targeted for that reason? His political opinion, Your Honor, is inherently manifested in his desire and belief that he should run a large business. The FARC is anti-landowning because they don't want the resources to be privatized. They're also anti-business because they And it becomes a self-fulfilling circle in that the business community keeps themselves wealthy and privatizing resources by virtue of controlling the political machine. And of course, the political machine supports the further accumulation of wealth. So is it your position that anyone like Mr. Cordova would be a target? Yes, Your Honor. And additionally, they did telephone him. And he spoke to them personally. And as he stated in his testimony and his written statement, that he cursed them and gave his opinion about them. And he also publicly espoused it in university when he was teaching. The background documentation does reference that the FARC populates the universities and campuses to gather intelligence and to keep track of who is espousing what beliefs. And to that end, it has resulted in teachers avoiding controversial topics and adopting a low profile. And that was at administrative record 186. So I'm clear, too, is it your position that the particular social group involved in your case is, quote, wealthy? It is. It's identified in the brief. And the language was wealthy landowning educated business people. As I stated earlier, the FARC has declared class warfare against landowners, against the wealthy class. Additionally, Mr. Cordova is educated in American case. What would you say if they said wealthy landowner would have been enough, but you also added educated business people? And that that's not a class. If who said wealthy landowners? I'm sorry, Your Honor. I said, if the facts were, as a matter of law, that wealthy landowners were a group, what would the effect be of your saying wealthy landowners who were, what was it, educated what? Educated business people. Educated business people. What would that do to your client's eligibility if he was not only a wealthy landowner, but he was also an educated business person? Well, I would take two prongs on that, Your Honor. I'd argue that the superfluous additional description is, again, superfluous, because we've already got the generalized target population. But in Mr. Cordova's specific circumstances, he was educated abroad in the United States. The FARC's platform is anti-Americanization. So they have, again, identified his particular class as someone who's a high-ranking member of his class, or a very fortunate member of his class. Yes, Your Honor. Are your two claims independent, that it's on account of his political opinion and account of his land ownership? No, they are inherently rolled into one, because the FARC's political invalidation. So if you don't prove both? Excuse me? If you don't prove both your claims, you lose? No, I don't believe so, Your Honor. I believe that the political claim can exist in and of itself, yes. And the other, the wealthy land ownership claim? Yes, Your Honor. Well, that was my question to you. Are they? But they are based upon the same political ideology. Well, that's very interesting. But it has a little to do with the question, which is, do you have to win both, or only one of the two claims? No, either one may suffice on its own. What does the evidence, if I may, one last question. What does the evidence in the record show? Does FARC target wealthy individuals or landowners? They target both. They started in the rural areas by targeting the landowners. And they have since expanded into the urban areas. And it was at Administrative Record 738 and 749, they have issued these bills or laws where they have specifically announced that they will target the wealthy. But their platform, as enunciated on page 751, also lists landowning and privatization of natural resources and Americanization of the country. I stand out of time, and if I may reserve. You may not reserve. You may request an extra two minutes. All right. May it please the Court. Imran Zadi, again, for the Attorney General. Your Honor, this petition again challenges the agency's denial of asylum, withholding of removal, and protection under the Torture Convention. Here, substantial evidence supports the agency's decision for three reasons. First, petitioner has not shown that he was targeted by FARC on account of a political opinion. Second, petitioner has not demonstrated, has not identified a social group. In this case, it's wealthy landowning business people that has both social visibility and particularity. And third, petitioner has failed to show that he faces a likelihood of torture in Colombia by or with the government's acquiescence. By and large, Your Honors, this case centers on political opinion. And there is simply no Why does it center on political opinion? If you make two claims, one, that you're persecuted on account of political opinion, and two, that you're persecuted because you're a landowner, wealthy or otherwise, and that's membership in that social group, why does it center on political opinion? Your Honor, I believe that's where petitioner himself centered all of his evidence in the brief. I think he has two pages on that. He said the evidence in the brief supports both claims. Yes, Your Honor. Well, if I could turn first to political opinion, I will address the social group claim. But first, petitioner submitted that political opinion is what motivated FARC to target him. There's two issues with this, Your Honor. First, petitioners identified nothing in the record to suggest that FARC was ever aware of any political opinion that petitioner may have had. The phone call was in counsel referenced. The phone call in 2001. Whatever year it was. I believe in 2001 there was a phone call in which they simply extorted him, asking for $100,000. Now, first of all, as Judge Murguia pointed out, during the time that petitioner first became, allegedly became politically active was in 1998. That was a time, a five year period during which nothing had happened. Prior to that, petitioner's business, or at that point his father's business, had already been targeted. His father had been kidnapped, I believe, in 1992. In 1995 and 1996, trucks were thrown off of a cliff because petitioner failed to comply with extortionist demands. He was targeted for extortionate purposes, which petitioner himself concedes is economic. But what petitioner also alleges here is that there is a political component to extortion. Now, Your Honors, the Supreme Court and Elias Zacharias made very clear that it is not the opinion of the persecutor, but the victim that matters. So here, the fact that FARC may have had a political platform and motivated their targeting has nothing to do with whether that targeting was based on petitioner himself's political opinion. And once again, petitioner has submitted nothing to suggest that FARC at any point even knew that he had a political opinion. And again, like Elias Zacharias, the point here is petitioner argues that he had a kind of generalized anti, or pro-American, anti-FARC view, and he hated them, and that's why he refused to acquiesce with their demands for money. Your Honors, Supreme Court and Elias Zacharias recognize there are a variety of reasons why somebody might resist recruitment or targeting. With extortion, a very clear one would be not wanting to give up money. So in this case, again, it's not clear that petitioner had a political opinion that at any point was referenced by FARC or was the motivating factor for FARC in targeting him. And this is made clear in petitioner's own testimony. He was specifically asked why he believed FARC targeted him, and he said, they were targeting me because that's the way they start scoping for people to contribute. That's on page 170 of their administrative record. Now, Judge Reinhart, turning to the particular social group issue here, again, we're back into land ownership. Now, the specific group here is wealthy, land-owning business people, or as petitioner submits in the brief, I think, before the court, wealthy, land-owning, educated business people. Now, Judge Reinhart, to get back to land ownership for a second, I forgot to clarify before, land ownership was recognized prior to the particularity and social visibility requirements in the matter of Acosta. So land ownership by itself was recognized prior to the particularity and social visibility requirements in the matter of Acosta. We quoted that and cited it favorably, the definition from Acosta. Favorably as satisfying Acosta's requirements, which at that point were an innate or fundamental characteristic or a past shared experience or, as this Court has held, a voluntary associational relationship. Those are different factors than particularity and social visibility. So from the standpoint of having a past shared experience or a voluntary associational relationship, it would satisfy that requirement. But in terms of social visibility and particularity, those are two separate dispositive grounds for denying a particular social group, and both of those were cited here. Now, looking at particularity, this claim, this group, especially if you take the one suggested by petitioner in his opening brief, is littered with the exact type of benchmarks that provide no basis for delivering a particular group. And so we can't say that he was educated to be in better shape. In that regard, yes, Your Honor. And that goes back to the same hypothetical you proposed before. If you take a group, say Federal judges, very well recognized, discreet group. Careful. Yes, Your Honor. But Federal judges who love Kitten. You add it to that able Federal judges. That's what that is. A smaller group. It is a smaller but less definable group. And that's exactly the point, Your Honor. That's a perfect example. Federal judges is a discreet class of persons. We do not dispute that. But when you say able, it falls directly into the warning from matter of AME that you can't use amorphous benchmarks for delimiting group membership. How would you define able? Everybody would define it differently. And that's what matter of AME said. Wealth, in that case, it was wealthy Guatemalans. It could be the top 1% of a population. It could be the top 20% of a population. It's impossible to delimit that group. Mr. Saiz, let me just take you through, if you don't mind, Enriquez-Rivas, because I'm trying to understand your position on this. But it seems like the Enriquez-Rivas court indicated an alien might satisfy the social visibility requirement by demonstrating merely that his persecutors considered him a member of a particular group. Correct? Yes. OK. Second, the Enriquez court indicated that particularity should not be considered a truly distinct requirement. Instead, it should be thought of as merely one factor as to whether a collection of individuals is considered to be a particular social group in practice. Correct? Yes, Your Honor. The BIA has never determined whether FARC, as opposed to the Colombian Society in general, would consider landowning businessmen, wealthy, educated people, or just leave it at landowning businessmen. They've never considered that and whether that group would constitute a distinct social group. Seems like there may be evidence in the record to support that. So don't we send that back to the BIA to consider it in the first instance? Judge Murguía, I don't believe you do. Let me address each of those points. I'll start with social visibility. What the court said in Enriquez-Rivas was that you can use the persecutor's perspective. It can be a factor. And in that regard, the court specifically limited that language, saying it was a suggestion and that it would let the BIA determine in the first instance whether the perspective of the persecutor matters in the context of the social visibility determination. Has the BIA ever held that it does matter? The BIA, and I believe the courts prior to this, have said that it can be a factor, but not dispositive. And the extent to which it matters is something that, as this court said in Enriquez-Rivas, it might like for the BIA to flesh out more. But what the court said is it would let the BIA address that in the first instance, but very importantly, that it is still the society's perspective that matters. It's just that in some circumstances, that might not be the exclusive means of determining society's perspective. So I can't. So are you disagreeing with Enriquez-Rivas, or you're saying, I'm trying to figure out why you say this case wouldn't be implicated? I'm saying it wouldn't be implicated, because what the court said in Enriquez-Rivas was, though the perspective of the persecutor can play a role, it's not the only thing, and it's simply something that the court can take into consideration. Whereas if there is already evidence of society's point of view, because that's ultimately what Enriquez-Rivas was trying to do, Your Honor, correct? By their own language, they were using the perspective of the persecutor as a proxy for how society would view somebody. So using Enriquez-Rivas itself, and by their own language, by this court's own language in that decision, if there was evidence in the record of society's point of view, or a lack of evidence thereof, then that by itself could answer the question. And that's what we submit here, is petitioner has submitted much evidence about FARC's point of view. Well, again, that might play a role in the analysis, but the board already properly determined here that from society's point of view, there is simply nothing to suggest that this group is socially visible, just based on the fact that FARC might consider them to be socially visible. And again, turning to Enriquez-Rivas, Judge Murguia, the type of evidence that would reflect society's perspective is a law, like the special protection, the witness protection law that was referenced in Enriquez-Rivas. And there's simply no such evidence here, and FARC's publications don't rise to that level. It seems like there's evidence for somebody to consider. It looks like the Resource Information Center report stating, FARC has increasingly targeted the middle class, as opposed to limiting its targets to wealthy elites. Freedom House reports stating FARC guerrillas regularly extort payments from hundreds of businessmen throughout the country. There's a news article stating FARC supports its operations by extorting money from businessmen, farmers, and shopkeepers. There's another saying FARC declaring it was imposing taxes on the wealthy. I don't know that that's something you can just say is just, you know, simple, and not relevant, and not something for someone to consider, especially since we didn't give, they never had the chance to really focus on that in the first instance, so. Well, no, respectfully, that's not what I'm saying. I'm sorry if I'm not being clear. I'm not saying that the board shouldn't have a chance to take a look at that. I'm saying that the board did. The board was already aware of the fact that a persecutor's opinion could play a role in the analysis. The board may not have specifically cited each piece of evidence here, but this court doesn't require that from the board. The requirement that, or the ability to consider evidence. So you're saying Enriquez-Rivas was just superfluous. It didn't really say anything about it, and anything, or certainly not significant. No, Your Honor, I'm definitely not saying that. What I'm saying is social visibility per Enriquez-Rivas, first of all, in that case directly, if you testify against a gang, you are going to be socially visible by virtue of having become public. Now, more broadly, what it said about social visibility is that if there is no evidence on record of society's point of view, or a lack thereof, then the evidence suggesting that an evidence of a persecutor's perspective can play a role. Again, the court said that is for the BIA to flesh out in the first instance. And the BIA, there's no evidence that they flesh that out in this instance. Can you point to somewhere in their report where they stated, talked about that? Where the BIA, where the board did? Yes. No, Your Honors, I can't. But we would submit that the board, I believe, cited matter of AME with regards to the particularity analysis, and matter of SEG with regard to social visibility. And now, again, in this case, if you cite matter of SEG, that's exactly the case, consistent with Ramos-Lopez, that says if society, if in a society, violence or a certain group's targeting of people is so pervasive that that group itself does not distinguish themselves from the rest of society. And that's exactly what we would say here with FARC. There might be some evidence in the record, and certainly Your Honor pointed to some, that they're targeting landowners and businesses. But the board relied on matter of SEG, and from that we can take that they didn't distinguish themselves still. There's still not enough objective evidence. And that's the standard on review here, is does the record compel the conclusion that the record shows, from society's point of view, that this group would be socially visible? So again, we respectfully believe Enrique Cervibas does play a role here. And speaking of Enrique Cervibas, on a brief note, Your Honors, with regard to particularity, again, I believe that it's- Very, very brief. Very brief, Your Honors. Let me just briefly conclude. There's very little evidence on torture convention here, Your Honors. No past harm, certainly nothing amounting to the level of torture, and also no acquiescence where the government, in fact, did try to help him. They simply were overwhelmed. Very briefly, Your Honors. That was it. Okay. Thank you. Thank you. Thank you, Your Honors. I just have two brief points. For purposes of a particular social group and whether this group is amorphous, I just underscore that the FARC has itself declared, and because it is such a notorious and feared political and aggressive group within Columbia, the rest of society is extremely aware of what the FARC is targeting. And for political opinion, this case can be distinguished from the point that my colleague brought up in Elias Zacharias, in that the FARC had already targeted and imputed a political opinion to this class prior to approaching anyone within the class. Therefore, when they do approach a wealthy land-owning business person, they have already imputed that political opinion to the person, regardless of their answer, whether they will provide that extortion or not. Thank you, Your Honors. What about your opponent's comment about the 91 phone call, that it was years before he was politically active and therefore unconnected? Again, the FARC imposes a general, imputed political opinion against the class itself. And the phone call occurred in 2001, I believe, not in 91, but I would have to check the record. Thank you. Thank you, counsel. The case is now submitted.
judges: Zouhary, Reinhardt, Murguia